**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**UNITED STATES OF AMERICA**                                     **PLAINTIFF**


**v.**        **AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**


**LOGAN PEEL**                                                  **DEFENDANT**


\* \* \* \* \* \* \* \* \*

I, Bethany Harmon, a Special Agent of the Federal Bureau of Investigation ("FBI"), having been first duly sworn, do hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigations (FBI) and have been employed as a Special Agent since 2024. I received approximately 20 weeks of training at the FBI Academy in Quantico, Virginia. During that time, I received training on various topics, including evidence collection, interviewing, legal procedure and process, source management, investigative technology, firearms and tactical training, and defensive tactics. I am currently assigned to the Louisville Division of the FBI. I have conducted or participated in surveillance, the execution of search warrants, the execution and analysis of legal process, and the interviewing of victims and subjects of several investigations. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. § 2261A.

1

2.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the issuance of a Criminal Complaint for Logan Peel ("Peel"), white male, DOB, XX/XX/2001, and does not set forth all of my knowledge about this matter. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2261A (Stalking) have been committed, are being committed, and will be committed by Logan Peel.

### STATUTORY AUTHORITY

3. This investigation concerns alleged violations of Title 18, United States Code, § 2261A. In short, 18 U.S.C. §  2261A(2) prohibits a person from using an electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce, to engage in a course of conduct with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person that places that person in reasonable fear of the death or serious bodily injury or causes, attempts to cause, or reasonably would be expected to cause substantial emotional distress to a person.

### SUMMARY

4.  On 9/12/2025 at 1544 hours, Officers with law enforcement met with VICTIM 1 in reference to a harassment complaint.  VICTIM 1 advised that Logan Peel had been harassing her after she ended an intimate relationship with him.

5.  VICTIM 1 advised that, beginning in or around August of 2025, Peel engaged in a course of conduct over several months that includes hundreds, if not thousands, of unwanted

phone calls, text messages, and contact through social media to VICTIM 1.  These contacts were made using a variety of phone numbers and accounts after VICTIM 1 would attempt to block the numbers and accounts. Many of the messages expressed anger with VICTIM 1 and, in some messages, direct threats of violence towards her.  Peel also would show up at locations where she was and, on one occasion, broke into her car.

6. VICTIM 1 also stated that, in addition to contacting her directly, Peel also repeatedly contacted her friends and place of employment. Peel sent sexually explicit images of VICTIM 1 to her friends and who he believed to be her mother.  He also repeatedly tried to ascertain her location by calling her workplace and the personal numbers of her co-workers.

## PROBABLE CAUSE

7. VICTIM 1 advised that on 8/1/2025, Peel began a pattern of attempting unwanted contact when he showed up at her residence in Lexington, KY and refused to leave. Despite her requests, Peel continued refusing to leave until VICTIM 1's father arrived at the residence.

8. VICTIM 1 stated that, approximately two weeks later, a series of disparaging remarks about VICTIM 1 were posted to VICTIM 1's work Instagram.  The remarks were reviewed by law enforcement and included allegations of drug usage by VICTIM 1. The accounts were newly created and did not have a name or profile picture attached to them, but VICTIM 1 believed that, based on the content of the comments, they were from Peel.

9. VICTIM 1 advised that on 9/12/2025, she received a total of 11 phone calls from an Instagram account called, "bluegrassbackup". VICTIM 1 answered some of the phone

calls and told Peel to stop contacting her, VICTIM 1 was able to identify Peel by his voice.

10. On 10/29/2025, Lexington Police Department Detectives served a Search Warrant to Meta for the Instagram account 'bluegrassmelts'. On 1/10/2026, Lexington PD received a Search Warrant return from Meta. The birthday on the account was the same as Peel's birthday. The phone number on the account, XXX-XXX-6766, is the same phone number that Peel provided Lexington PD as his contact information for a collision report on 04/27/21.  There were multiple messages between the 'bluegrassmelts' account and VICTIM 1's account. The conversation starts with the following message from 'bluegrassmelts' on 2025-08-15 07:59:39: "Cunt ass bitch."

 a. The conversation includes the following messages sent on 8/15/2025 between 19:22:32 UTC and 19:22:48 UTC:

  i. VICTIM 1's account: "*that's all I want there is 100 blondes just like me go bother them not me*"
  ii. VICTIM 1's account: "*I'm out*"
  iii. Bluegrassmelts: "*nah fam*"
  iv. Bluegrassmelts: "*you're not done*"
  v. Bluegrassmelts: "*lol*"
  vi. Bluegrassmelts: *"I'm just getting started"*

 b. Bluegrassmelts repeatedly asks to talk on the phone and asks VICTIM 1 to meet in person multiple times. VICTIM 1 continuously declines the offer and requests to be left alone. There are over 100 audio call attempts from 'Bluegrassmelts' to VICTIM 1. On 10/1/2025 at 12:17 UTC the following messages were sent:

  i. Bluegrassmelts: *"I got real phone coming you're so fucked lol"*
  ii. Bluegrassmelts: *"You won't be able to take it off dnd"*

c. On 8/17/2025 at 06:46:29 UTC 'Bluegrassmelts' sent a photo of Logan Peel and VICTIM 1. He then sent the message, "Wow look at that I had a smile on my face when was the last time that happened."

11. On 10/27/2025, M.W., a friend of VICTIM 1, reported to law enforcement that Logan Peel had been sending her multiple sexually explicit images of VICTIM 1, via Instagram Direct Message since 8/15/2025 from the account "bluegrassmelts". M.W. advised she deleted the messages and blocked the account, but she continuously receives requests from new accounts that she suspects are made by Peel. M.W. took screenshots but edited them to conceal the nude body parts of her friend, VICTIM 1.

12. On 1/16/2026, S.B. reported to the FBI that she had received text messages with pornographic images and phone calls from unknown numbers, including XXX-XXX-8521, for the past 3-4 months. The messages included sexual remarks, harassing insults, and threatening statements. One message was "your daughter is a whore", but S.B. does not have a daughter. After further investigation, law enforcement learned that the phone number being used by S.B. used to be the phone number assigned to a phone used by VICTIM 1's mother. VICTIM 1 confirmed that she was the person depicted in the pornographic images being sent to S.B.

13. On 3/12/2026, the manager on duty at VICTIM 1's place of employment also filed a police report about Peel's conduct. The manager advised that the business had received hundreds of phone calls from Logan Peel, who called multiple times a day attempting to speak with VICTIM 1. The manager advised that Peel would use profanity with the staff and that he had obtained phone numbers of staff and their spouses and attempted to contact them on their personal cell phones. Peel had called staff members nearly 100

5

times since January 1 of 2026. During these calls, Peel asked if VICTIM 1 was working and, when staff refused to answer, Peel stated he would get as many phone numbers as needed and would keep calling.

14. On 3/27/2026 at 2257, law enforcement responded to a complaint by VICTIM 1 alleging that Peel had broken into her car.  VICTIM 1 stated that her car had been noticeably rummaged through and that her birth certificate was missing. VICTIM 1 also later realized that a Strawberry Shortcake stuffed animal was taken from  the car. VICTIM 1 advised that she also saw Peel at her place of employment that night. She reported this to law enforcement, but Peel left before they arrived. This was the first time VICTIM 1 had physically seen him since August of 2025. As detailed later in the Affidavit, Peel admitted to being at VICTIM 1's place of employment and breaking into her car that evening.

15. VICTIM 1 advised that an unknown number, which she believed was Logan Peel, contacted her via text after the theft occurred. The following is a screenshot of those messages:



16. VICTIM 1 advised she had received messages, calls, and social media posts/messages

from unknown accounts for the past few days. VICTIM 1 knew the calls were Peel

because she recognized his voice. As detailed later in the Affidavit, Peel admitted to

calling and sending VICTIM 1 messages. He specifically admitted to the text thread

above beginning with "thank you for the strawberry shortcake" and admitted to taking a plushie out of her car.

17. On 3/29/2026, VICTIM 1 contacted Lexington PD to advise that, since making her previous report on 3/27/2026, VICTIM 1 had continued to receive a multitude of phone calls from blocked numbers or numbers unknown to her, including 15 voicemails from Peel. On 3/29/2026, Peel called her place of work over 20 times attempting to locate VICTIM 1.

18. VICTIM 1 shared the following screenshots with Lexington PD of some of the messages she had received:







19. VICTIM 1 also shared recordings of voicemails from Peel with law enforcement. VICTIM 1 confirmed that the voice was that of Peel. The following is a transcription of the voicemails:

    a. March 28, 2026 at 12:30 pm from 'Unknown': "*Alright, well, guess you're not at work but it doesn't matter I'll follow you wherever you are*"

    b. March 28, 2026 at 12:57 pm from 'Unknown': "*Hey, I know you're at your fucking man's house. Looks like he's at work, I don't fucking know. But it's too bad you won't fucking talk to me bro I'm trying to just get this shit over with. I want you out of my mind as much as you want me out of yours, so fucking hope you look at that note and call me, or I mean let me call you I guess. Bye*"

    c. March 29, 2026 at 10:19 am from 'Unknown': "*(inaudible) couple hours to turn your thing off before I come looking for you. We are not done talking.*"

    d. March 29, 2026 at 11:58 am from 'Unknown': "*Shit I'll see you in a little bit you dumb ass hoe.*"

20. On 3/30/2026 at approximately 0516, law enforcement went to Peel's listed address. Peel's sister answered the door and advised that Peel was asleep. Peel then fled the apartment through his bedroom window. Law enforcement waited and, upon his return, was able to interview Peel. Peel admitted to sending messages and voicemail messages to VICTIM 1 from various numbers and confirmed he was in the parking lot of VICTIM 1's apartment complex the day prior to the interview. Peel also stated he had recently come to VICTIM 1's work for the first time and admitted calling her work place many times. Peel confirmed he stole a plush toy from VICTIM 1's vehicle a few days prior to the interview and then returned the toy to law enforcement. The law enforcement officer

11

read some of the text messages and played some of the voicemails sent to VICTIM 1. Peel initially gave no response but later stated "I get it". Peel was read a text message that stated "Can we just fuck and I'll leave you alone forever?" and replied that the message was "old." Peel agreed that his behavior was escalating, that he needed to stop, and agreed to not have any further contact with VICTIM 1.

21. On 3/30/2026 VICTIM 1 spoke with the FBI and Lexington PD about Peel. VICTIM 1 stated she was concerned Peel would harm her and possibly kill her if given the opportunity. VICTIM 1 previously provided a screenshot to Lexington PD of messages she received on Instagram from a logan.peel_ which she stated was from Peel. The message from Peel stated "I wish I could put my hands around your neck and squeeze till there's no life left."



VICTIM 1 stated in her interview that Peel had been violent with her in the past. According to VICTIM 1, Peel pushed her down the stairs and slapped her prior to their breakup.

22. During her 3/30/2026 interview with the FBI, VICTIM 1 stated Peel recently accessed her Facebook account without her permission. According to VICTIM 1, Peel used her Facebook account to send her friends messages and nude photos of VICTIM 1. VICTIM 1 believes Peel sent people explicit photos of her to "ruin" her life and cause her harm.

23. On 3/31/2026, Affiant spoke with the general manager of VICTIM 1's place of employment. The manager advised that Peel has applied for 11 different job listings on Indeed to VICTIM 1's place of employment. The first time Peel applied was January 26, 2026 and the most recent application submitted by Peel was on March 27, 2026. The listings are for a range of positions, including Sous Chef and Sales Manager. The phone number Peel used on his most recent application was "XXX-XXX-8521", which is the same phone number that sent S.B. the sexually explicit images of VICTIM 1.

24. Despite being made aware by law enforcement to no longer contact VICTIM 1, Peel has continued to do so as recently as 3/31/26.

25. Based on my training and experience and information provided by the FBI, some of the common forms of stalking are unwanted calls, texts, mail, or emails; approaches to home or work; social media messages and monitoring; unauthorized access to social media or other accounts; and watching, following, or spying via listening device, camera, or GPS tracker, and threats of violence. Peel has exhibited many of these behaviors and actions with VICTIM 1, and his actions appear to be escalating. I believe that the facts set forth above support that there is probable cause to believe that Peel has engaged in a pattern for

14

several months to intimidate and harass VICTIM 1, and his actions have caused VICTIM 1 to reasonably fear for her safety in violation of 18 U.S.C. § 2261A(2).

Bethany Harmon, by EBA with permission
Agent Bethany Harmon
Federal Bureau of Investigation ("FBI")

Sworn to before me on __April 1_____, 2026

Signed By:
Edward B. Atkins  *EBA*
United States Magistrate Judge

MATTHEW A. STINNETT
U.S. MAGISTRATE JUDGE